First, thank you, Chief Judge. May it please the Court. My name is Matt Davis. I represent the appellants in this case. The appellants in this case are five individuals. It's Barbara Kellum, who is the grandmother of Michael Byrd, along with her four, I'm sorry, the mother of Michael Byrd, along with her four grandchildren who are Michael Byrd's children. Michael Byrd died in an auto accident related to an uninsured motorist case. He was run off the road by an unidentified driver. The only reason that the appellants are in this case is because after Michael Byrd died, they made a claim for uninsured motorist benefits. That claim then went to the Cape Girardeau State Court for approval under Missouri's wrongful death statute of the settlement between Ms. Kellum and her grandchildren and Nationwide Insurance Company. Under the wrongful death statute, the mother and the children were the only class of participants who had a claim for wrongful death under the statute. He was unmarried at the time. If he was married, the spouse would have had the only claim. When they brought that claim for those damages under the Missouri wrongful death statute 537.080, their damages were limited under the companion statute 537.090. Those damages were for their own pecuniary losses. They were not for the damages that Mr. Byrd would have suffered prior to his death. Well, can I ask you about that? I'm looking at 537.090 and it clearly talks about the to the spouse or in this case children and so on. But it also says in addition, they may award such damages as the deceased may have suffered between the time of injury and the time of death and recovery of expenses, et cetera. So why isn't that part? In a lot of states, you have two recoveries. If I read 537.090, that's what you have in Missouri. You have a claim for the damages that the decedent sustained, could be funeral expenses, could be medical expenses, whatever, which is what we have in this case, plus a claim for damages for the survivors. Why aren't there two separate claims within this case? You're right, Judge, that it does include language that the trier of fact could allocate some damages to a portion of damages that the decedent may have had before the injury and has lost. That is true. That is an allocation of damages that is available to a trier of fact. In this case, a jury could allow those damages. That is different from a survival statute. A survival statute is essentially the estate of, so the class of participants would be larger than what the Missouri statute is. But there is a distinction there. And I would point you to what we cited to a central district, a federal case, a central district of Illinois case, because Illinois does have both statutes. They have the wrongful death statute and a separate survival statute. And in that case, the ERISA plan, even though part of the issue was they were late in joining the case, there was an allocation of those under the wrongful death statute and a smaller portion under the survival statute. And in that case, the central district of Illinois said that that was appropriate, that the finder of fact found that the damages available, the allocation was appropriate, that the majority should have been under wrongful death statute for the pecuniary loss and there was a smaller survival statute damage. And in that case, the only available then amount for the equitable allocation of damages in this case, in fact, there was $50,000 in coverage available for five people. The medical bills were astronomical. He was in a coma for some period of time. And of course, it was the death of a father for four children. In the wrongful death statute under 090, the damages allocate specifically damages and how they're calculated for the dead horse. But basically what you're saying, though, is that Illinois had two separate statutes. Missouri seems to have put them both into one statute. But it's still the same concept, isn't it? You have a survivor statute and you have a wrongful death statute. It could be. It could be. But in any event, the statute still requires an allocation of regardless of any trier effect, regardless of any evidence, regardless of any claim for their own damages, that under the wrongful death statute, that the equitable remedies weigh in favor of the plaintiff, or I'm sorry, weigh in favor of the plan. And that's not consistent with the case law. However, I would go on to argue, though, that what they are trying to do is to make a claim, as they state repeatedly, for subrogation interests. And there is no subrogation interest in a claim that has been abated. What they're trying to do is to step into the shoes of a class of plaintiffs who were not participants or beneficiaries under the plan. And the ERISA statute only allows, first of all, you have to be a planned fiduciary to have standing to bring a claim for equitable remedies. And you can only go after planned participants or beneficiaries. And the case law, starting most recently with the Montanay case, going all the way back to the Mertens case, clearly establishes that they are only allowed to go after money that is clearly available to the planned participant or beneficiary. In this case, even if you're talking about some survival damages, which aren't under a survival statute, but again, under a wrongful death statute, but damages which could be allocated to some of the suffering or mental anguish of the decedent prior to his death, what they're still doing is trying to reach over into the claim for people who are not participants or beneficiaries under the plan and are pursuing it under a separate claim, not a claim that belongs to Mr. Byrd, because his claims were abated. Now, they certainly would have had the opportunity to subrogate prior to his death. They were on notice of his injuries. They had made inquiries into his mother about what available benefits were there. And while he was physically unable to go and pursue a claim for uninsured motorist damages, under the subrogation rights under the plan language, the plan certainly could have started that action. And we would be in a different situation now, because the claim would not have abated in the same way under his death. They could have continued to pursue those benefits for the medical damages which they paid as the result of his injuries. But once that claim abated, all those claims then belong to a participant who had really nothing to do with his employer, with his employer's health benefit plan. They would not have been liable for his medical bills, because it was not an estate action. It was a wrongful death action. The providers could not have made a claim themselves under the wrongful death statute. But if it was a survival action brought by the state, the claims of debtors, such as hospital bills or an equitable remedy under an insurance plan for the benefits that they paid, could have entered into that case and it would have been a different situation. Can there be a wrongful death claim without identifying a tortfeasor? In Missouri, the case law states that you do not need to name the tortfeasor. So you don't need to name the phantom vehicle. We don't know who the tortfeasor was in this action. So there is a tort, but under the wrongful death statute, it may, well in this case, if there was a tortfeasor, then that would be a different situation. In this case, it was a contract action. So the courts have explained a UM case is sort of a hybrid tort, because you do have to have the underlying tort, but it's really a contract action to pay under the wrongful death statute for the tort that occurred. Even though you haven't identified a tortfeasor, it's still recoverable under the contract? Correct. And that's limited to uninsured motorist cases. That's the coverage that is available. That's a statutory coverage that is required in every policy of auto insurance in Missouri. So it is a statutory contract action. There has to be an underlying tort. And the courts have sort of said it is a hybrid type of action, even though in some cases you could be litigating the tort and there could be other intervening circumstances. Again, that was never the case. This was a settlement for the policy limits that then only went to court because under the statute, the wrongful death and the allocations had to be approved. And before that happened, this case was removed to federal court and we ended up on motion summary judgment and we've ended up here. Now you were the plaintiffs in the state court action, correct? My client was. She was pro se throughout the state court action. Your client was the plaintiff in the state court? Yes. Barbara Kellum and... So I'm trying to understand how there's federal jurisdiction here. Maybe you can help me with that. I read the removal notice and it relies on the complete preemption doctrine. But as I understood the complete preemption doctrine here, the cases say that a common law, state common law claim is converted to a federal claim if the common law claim is within the scope of the ERISA civil enforcement provisions. And our position is the federal court does not have jurisdiction over the uninsured motorist wrongful death claim because ERISA would not apply to that claim. And the wrongful death statute is not preempted. Where did you argue? Did you argue in your brief on appeal that we should dismiss this for lack of jurisdiction? I don't think anybody raised it. They had raised that ERISA preempts the wrongful death statute. So I mean to your point, ultimately back to the state court to simply decide the allocation of the wrongful death because we're saying that ERISA does not apply in this case because... Well, I'm not saying whether ERISA apply. Yeah. Okay. ERISA is the only way that you get federal court jurisdiction. Federal court jurisdiction was saying that... I'm sorry, Judge, that it was all preempted. That happens a lot. Someone says ERISA preempted federal court. State courts say take it. Well, the state court didn't decide the removal issue, did it? It was the district court. Well, they allowed them to intervene into the wrongful death case for the purposes of removal of ERISA. That was also the basis for their intervention was that they had an ERISA right of reimbursement. And if it's okay, I'd like to... So your position is that the plaintiff in the state court action did not bring a common law claim that comes within the ERISA civil enforcement provisions? It was a statutory claim under the wrongful death statute. It was for approval of wrongful death. I know what it was under Missouri law, but the question is, was it a claim that comes within the ERISA civil enforcement provisions such that it's removable? No. Their claim is what they're saying is an ERISA removable case. Their claim for reimbursement. Yeah. That was a claim that was raised for the first time in federal court after the removal. Correct. So I'm trying to understand how the case was removable, but I think you've addressed it. Thank you. Thank you. And I'd reserve the rest of my time. All right. Ms. Cox, we'll hear from you. May it please the court. My name is Kirsten Cox and I am appearing on behalf of FLE, Gilster Mary Lee Corporation Group Health Benefit Plan. Consistent with the Supreme Court's holdings in U.S. Airways v. McCutcheon, an ERISA's planned subrogation rights are strictly governed by the contractual language set forth within the plan's terms. It's that simple. What does the contract say? Well, let me... Well, I don't mean to jump in right away, but sort of to follow up on what Judge Colleton was saying, if you had no subrogation in the contract, could you get subrogation? Is there a free-floating ERISA right to subrogation? So that... Well, I believe that the plan has to provide for the subrogation. So then is this a contract? Is this a by... I would say that it is. In order for there to be us intervening under ERISA, we have to do it under the contract provisions included in the ERISA plan. If that makes sense. I'm sorry. Go ahead. So here, the language expressly provides that the health plan has an unequivocal right to recover the funds available through nationwide uninsured motorist coverage. However, this case is unique in the appellant's attempt to categorize the recovered funds as arising from a wrongful death claim. However, the underlying action below is not a wrongful death claim at all, as there is no tort feeser and there is no tort. Mr. Bird's unfortunate passing was a one-car accident with no one to recover damages from. That has been made clear through the police report and the documents in the below action. Rather, a wrongful death claim was manufactured by Nationwide Insurance in an attempt to avoid paying their ERISA plan the monies it is owed, while instead trying to pay the insurance proceeds to its insured state. As the record below shows, and contrary to what appellants argue, the health plan asserted a subrogation lien against Nationwide's policy long before Nationwide filed its friendly petition. Not wanting to pay the health plan, Nationwide essentially represented its own insureds and filed a suit against itself, calling the action a wrongful death claim. Can we talk about your client's standing? Under Hastings, I think your client would need to be a participant, beneficiary, or named fiduciary. Correct. Yes. Are they either of those three? Yes. It is our position that my client is a named fiduciary, being the health plan. What supports that? What law, what part of the statute supports that the plan itself, as opposed to a participant or somebody like that? Yes. Basically, the ERISA, the Supreme Court in Mertens makes clear that a fiduciary can be anyone else who exercises discretionary control or authority over the plan's management, administration, or assets. That would be an unnamed fiduciary, and that would be fine, but is there any pleading that supports that discretionary ... Was that pled in any way, that they had this discretionary authority over the plan's assets? Yes, I believe so. When one appellee intervened in the case initially, they made clear that they were ... They're not the named plan administrator, but the named plan administrator is not the actual plan. It is Gilster Marie Lee Corporation. Which is not a party to this case. No, that is correct. Just the plan. But the plan is, and there is case law that supports that a plan can be a fiduciary. I won't argue with that. If it's pled that they have discretionary authority, and that's what I'm asking, is that pled? I believe that it was. To be honest, Your Honor, I can't specifically point to where, but I believe that it was. You're saying that the plan is a fiduciary of the plan? The plan is ... Or the plan administrator is a fiduciary of the plan? I would argue both. That the plan administrator and the plan itself is a fiduciary. But the only party here is the plan itself? Correct. How is the plan itself a fiduciary of the plan? My understanding is that because the plan's language is controlling of the plan, it can also be a fiduciary. There is case law that supports this specifically. You cited the Sixth Circuit case, Saromar Aluminum, but their case is the other way. A couple circuits have said the other way. There is some split authority, but I would like to point out specific ... Sorry. The Saromar case concluded that the plan, as a party before the court, includes those who must act for the plan to administer it and to effectually its policies. But those sound like ... I understand that's what they said, but those sound like individual people who administer the plan, not the plan itself. But you're right. They did say that the plan itself was a fiduciary. But the Second Circuit and the Ninth, I think, say the opposite, so we may just have to ... Well, I think importantly, the statutory scheme provides that an ERISA plan is an entity that may sue and be sued. Well, that's true if they have a cause of action, but you could read that to mean they may sue and be sued if they have a cause of action, and whether they have a cause of action depends on whether the plan is a fiduciary. Anyway, do you have anything to say about the removal issue? I know it wasn't briefed, but I'm wondering whether this petition really satisfied MetroLife against Taylor as a common law claim that was attempting to enforce ERISA, or if it was just a state common law wrongful death claim that's not removable. Are we okay? Yes, sorry. Take a break here. Take a break for a minute. We'll pause for a minute here. We'll pause for a minute here.